GIBSON LAW FIRM, PLLC

SUJATA S. GIBSON, ESQ.
120 E Buffalo St., Suite 2
Ithaca, New York 14850

April 17, 2026

**BY ECF**
Hon. Clay H. Kaminsky
Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Tunnell et al. v. The City of New York et al.* 1:25-cv-01781 (AMD) (CHK)
Letter Motion for Leave to File Second Amended Complaint

Dear Judge Kaminsky:

Pursuant to Your Honor's Individual Practice Rules, Plaintiffs respectfully seek leave to: (1) file a Second Amended Complaint (SAC) adding new facts and individual capacity defendants based on evidence unsealed weeks ago after court order; and (3) for whatever further or different relief the Court deems just.

Plaintiffs have conferred with Defendants by email multiple times since late March about the emails and need to amend accordingly. Most recently, Plaintiffs sent the proposed amended complaint and requested to meet and confer/know the Defendants' position on April 15, 2026 but have not heard back.

Accordingly, Plaintiffs respectfully file this letter motion seeking permission to file a Second Amended Complaint. A clean copy is attached as Exhibit A, redlined version attached as Exhibit B and the triggering emails are attached as Exhibit C.

In this proposed SAC, Plaintiffs have attempted to make very limited amendments solely to add the new Defendants and incorporate the new evidence from the emails, as well as address a few minor points Defendants dispute about whether Attorney Eichenholtz "drafted" or merely "advised" regarding the original facially discriminatory policy adopted at the DOE and later struck down by the Second Circuit. Plaintiffs do not concede that this issue is settled, but as it is not necessary to resolve it now, were willing to amend on that point accordingly.

## I. Pending Motion to Dismiss and Background

The newly discovered evidence is highly relevant to the claims currently sub judice. Plaintiffs are municipal employees denied religious accommodations to the City's Covid-19 vaccine mandate. They assert constitutional, Title VII, and state/local statutory claims.

The recently unredacted emails fundamentally change the constitutional framework. Prior Second Circuit rulings in *Kane v. de Blasio* and *New Yorkers for Religious Liberty, Inc. v. City of*

*New York* (“*NYFRL*”) found viable free exercise claims as applied through the religious accommodation process but declined to find that neutrality was defeated at the level of the mandate because the complaints in those matters did not include allegations sufficient to show that Commissioner Chokshi or the City were involved in the religious accommodation process. The newly discovered evidence provides that missing link and gives rise to personal liability claims against multiple high level City actors.

## II. The Relevance of the New Evidence

For the last four years, the City has been improperly withholding a September 2021 email chain (**Exhibit C**) providing direct evidence of the tangible connection between the City and the DOE’s original discriminatory religious exemption process. The emails show Commissioner Chokshi concurrently worked with City Hall and the Mayor’s “COVID Czar” Jay Varma to develop and approve guidance for the purpose of directing and assisting arbitrators to reject disfavored categories of religious objections. Specifically, the City’s chief representative in the administration of the DOE religious accommodation process emailed Chokshi and others seeking for assistance in helping to get whole categories of religious objection denied and stated: “It would be very very helpful if we could get a document signed off on by a City Doctor that essentially makes the argument as to why this is BS.” Chokshi did not repudiate this comment, but eagerly complied, with the help of the others on the email chain, preparing a letter that was sent to arbitrators, DOE decision makers, Citywide Panelists and every City department reviewing religious applications. This letter improperly used the mantle of authority of the Commissioner’s office to weigh in on religious matters and encourage denial of valid and sincerely held religious beliefs.

These emails were previously redacted and only recently produced following a state-court order from the Appellate Division, Second Department. See *Matter of Jimmy Wagner v. New York City Department of Health and Mental Hygiene* (Index No. 2023-07158). Plaintiffs received courtesy copies of the unredacted emails in March and immediately reached out to the City to see if we could come to an agreement to amend the complaint to add this information.

## III. Bases for Amendment: Conduct Supporting Inference of Animus and Pretext

Among other relevant facts, the unredacted record and 2024 admissions by Jay Varma show:

1. **Coordinated Disparagement**: High-level City official Steven Banks directed Chokshi and a team from City Hall to create a letter to help religious accommodation evaluators “essentially make the argument as to why [certain religious objection – particularly abortion concerns] is BS.” Chokshi’s agreement to do so is inconsistent with the “neutral and respectful consideration” required under *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S. Ct. 1719 (2018). Because the government “cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs,” this evidence supports a plausible inference that the mandate and process for implementing it were not neutral or respectful toward certain religious beliefs. *Id*. at 1729-1731. Under that standard, Chokshi’s failure to repudiate or “disavow” characterizing whole categories of beliefs as “BS” is alone sufficient, at the pleading stage, to support an inference of animus and non-neutrality. *Id*. at 1729-30.

2. **Establishment Clause Violations**: the resulting “Chokshi letter” instructed arbitrators and Citywide Panelists and others reviewing DOE religious accommodation requests that religious

objections were invalid because leaders like Pope Francis were vaccinated. The emails reveal City Hall added this to the Chokshi Letter after realizing they could not scientifically refute the use of aborted fetal cells in the production of the vaccines. Noting their source was more "neutral" on this issue than they'd hoped, Jackie Bray from City Hall advanced the idea of adding that even if aborted fetal cell lines were used, religious objections were still invalid based on City officials' interpretation of religious doctrine. Chokshi agreed and this "religious analysis" about what is "clearly" allowed for Roman Catholics and other religions was added. The letter, particularly with the email sequence showing why this clause was added, supports a plausible Establishment Clause violation, as the government may not lend power to a religious dispute or "punish the expression of religious doctrines it believes to be false." *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990). This evidence also more than meets the minimal notice pleading standards for the statutory and Equal Protection based discrimination claims. *Littlejohn v. City of New York*, 795 F.3d 297, 306-311 (2d Cir. 2015).

3. **Admitted Policy of Harassment**: The involvement of Dr. Jay Varma—Senior Public Health Advisor to the Mayor, frequently described as the City's "COVID Czar"—provides another critical "tangible connection" between City Hall, Chokshi and the DOE. These unredacted emails prove Varma remained a primary gatekeeper at City Hall through late September 2021, using an official JVarma@cityhall.nyc.gov email to exercise final approval power over the accommodation process. On September 21, 2021, Varma gave the final directive – "Memo ok with me"—to a policy document intended to provide "factual information" for arbitrators to use to argue why religious objections were "BS."

The Chokshi Letter Varma approved included a list of common medications (e.g., Tylenol, Advil) that City Hall staff explicitly admitted they "had not been able to verify" using aborted fetal cells similarly to the Covid-19 vaccines. Indeed, as asserted in the complaint in this matter, Tylenol and other brands listed in the letter have confirmed they did not use aborted fetal cells in any way to bring the product to market. Despite the lack of verification for the claim that these medications implicated abortion the same way as the Covid-19 vaccines, Varma and Chokshi authorized the list to be used in the adjudicative process to refute the sincerity of religious objections; employees were asked in hearings if they used these medications as a "gotcha" to brand their religious objections as insincere and sometimes flat out denied if they didn't think to mention that they did not use them. Thousands of DOE and City employees were denied on this basis alone.

Varma's participation in the 2021 efforts to categorically deny valid religious objections using unverified scientific claims makes his infamous 2024 admissions relevant here as well: captured on video, Varma admitted the mandates were a policy of "harassment" to make life "really [expletive] hard" for objectors, and that the mandates—which he was responsible for promulgating—were not strictly necessary because "natural immunity" and testing were as effective or more effective. Varma admitted he relied on this well-known scientific fact to participate in conduct inconsistent with the policies he publicly advanced including during the same period the mandate was issued.

Varma simultaneously bragged in those videos that he had been responsible for promulgating the mandates. This admission, coupled with the emails showing Varma's involvement with Chokshi to try to categorically suppress religious accommodation at DOE through scientific claims

the City knew it could not verify supports a plausible inference of pretext and non-neutral application of the mandates from the inception.

**IV. Requested Amendments and Abeyance**

Plaintiffs seek to amend to add these facts and personal capacity claims against Ashfar, Varma, Banks, and Bray. The improperly withheld emails establish the personal involvement of these officials in the conduct at issue, including directing, drafting, and approving the guidance used to justify denial of valid religious accommodation requests. These allegations are sufficient at the pleading stage to support individual-capacity claims under 42 U.S.C. § 1983. Defendants knew or should have known they would be named. In the email chain, Jackie Bray even states that the memo they were drafting for Chokshi would "absolutely be subject to litigation."

No prejudice results to Defendants, as this case is at its inception, they have not turned over any discovery yet other than a handful of personnel records, and the delay is attributable solely to the City's own multi-year suppression of these unredacted records. Fed. R. Civ. P. 15(C)(1)(C)(ii).

Moreover, the amendments to the first amended complaint (amended on February 6, 2026) are limited and should not create substantial additional work for Defendants, who just received an extension to file their motion to dismiss on or before May 15, 2026. Plaintiffs do not object to a short further adjournment of that deadline if amendment is permitted and Defendants deem that necessary.

Respectfully Submitted,

/s/ Sujata S. Gibson
Counsel for the Plaintiffs

Cc: All counsel via ECF