**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x

SHARON TUNNELL, EDISON GBOR, GREGORY GORDON, FRANCESCO ODDO, JOHN CLARKE, DAVID R. BURGOS, JOHN D. BRANCACCIO, JR., JOHN KENNEDY, MARC ROBINSON, TIMOTHY RIVICCI, JOHN V. SCHAEFER, MATTHEW PASIEKA, ROMMEL A. PEREZ, MATTHEW DEMEREST, ARETHA SIMMONS, JANE AND JOHN DOES 1-100, individually and on behalf of all other persons similarly situated,

Plaintiffs,

- against -

THE CITY OF NEW YORK; and JOHN and JANE DOES 1-10 in their personal and official capacities.

Defendants.

------------------------------------------------------------------- x

Case No.

**PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs, by and through their attorneys, hereby request that Defendants respond, within thirty (30) days of service hereof, to the following Interrogatories in accordance with the definitions and instructions set forth below.

## DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of this Court.

Unless otherwise indicated herein, all capitalized terms shall have the same meaning as set forth in the Complaint, as those terms are defined below.

As used herein, the words, terms, and phrases set forth below shall have the meaning or meanings prescribed for them:

A. *Accommodation*. The term "accommodation" means dispensation, exception, exclusion, release, relief, special treatment, or privilege. The term "exemption" has the same meaning.

B. *Action.* The term "action" means the above-captioned civil action.

C. *And.* The term "and" includes the term "or", and the term "or" includes the term "and", such that each Interrogatory calls to produce the greatest number of documents.

D. *Any.* The term "any" means all. The term "all" has the same meaning.

E. *Brancaccio.* The name "Brancaccio" or "Mr. Brancaccio" means plaintiff John D. Brancaccio, Jr. in this action.

F. *Burgos.* The name "Burgos" or "Officer Burgos" means plaintiff David R. Burgos in this action.

G. *City.* The term "City" means defendant City of New York in this action and includes each of its subsidiaries, divisions, subdivisions, affiliates, and predecessors, including, without limitation, any of its past or present members, partners, associates, directors, officers, employees, representatives, agents, actuaries, accountants, intermediaries, and other persons or entities acting or purporting to act on its behalf, insofar as they were acting in that capacity.

H. *Chokshi*. The name "Chokshi" or "Commissioner Chokshi" means Commissioner Dave A. Chokshi of the New York City Department of Health & Mental Hygiene.

I. *City Workers.* The term "City Workers" means employees of the City and includes each of its agencies, subsidiaries, divisions, subdivisions, affiliates, and predecessors, including, without limitation, any of its past or present members, partners, associates, directors,

officers, employees, representatives, agents, actuaries, accountants, intermediaries, and other persons or entities acting or purporting to act on its behalf, insofar as they were acting in that capacity at any time during the relevant time period specified in any of the Interrogatories below.

J. *Citywide Panel.* The term "Citywide Panel" means the New York City Vaccine Mandate Reasonable Accommodation Appeals Panel.

K. *Clarke.* The name "Clarke" or "Mr. Clarke" means plaintiff John Clarke in this action.

L. *Communication.* The term "communication," and its conjugates, refers to every manner or means of disclosure, transfer, or exchange of information (in the form of facts, ideas, inquiries, or otherwise), orally, written, or electronically transmitted.

M. *Complaint.* The term "Complaint" means the Complaint filed in the above-captioned civil action on or about March 31, 2025.

N. *Concern.* The term "concern," and its conjugates, means relating to, referring to, describing, evidencing, or constituting.

O. *Contain.* The term "contain," and its conjugates, means to include, to have within, or to have as a component.

P. *COVID-19 Relief Funds*. The term "COVID-19 Relief Funds" refers to any financial assistance, reimbursements, allocations, subsidies, grants, or funds provided by federal, state, or private entities in response to the COVID-19 pandemic, including, without limitation, funds received under the CARES Act, the American Rescue Plan Act, the Coronavirus Relief Fund, FEMA, and any other COVID-19 related aid program.

Q. *DCAS*. The term "DCAS" refers to the Department of Citywide Administrative Services.

R. *Defendants.* The term "Defendants" means the City, as defined herein, and John and Jane Does 1-10 in their personal and official capacities, and any other individuals or entities later identified and substituted for these fictitious names.

S. *Demerest.* The name "Demerest" or "Officer Demerest" means plaintiff Matthew Demerest in this action.

T. *Document.* The term "document," and its conjugates, is synonymous with the broadest possible meaning of the word "document," as that word is used in Federal Rule of Civil Procedure 34(a).

U. *DSNY*. The term "DSNY" refers to the New York City Department of Sanitation.

V. *EEO*. The term "EEO" means Equal Employment Opportunity.

W. *FDNY*. The term "FDNY" refers to the Fire Department of the City of New York.

X. *Gbor.* The name "Gbor" or "Mr. Gbor" means plaintiff Edison Gbor in this action.

Y. *Gordon.* The name "Gordon" or "Detective Gordon" means plaintiff Gregory Gordon in this action.

Z. *Identify (with respect to documents).* When referring to documents, the term "to identify" shall mean to give, to the extent known: (1) the name and address of the custodian of the document; (2) the location of the document; and (3) a general description of the document, including the (a) type of document, (b) general subject matter, (c) date of document, and (d) author(s), addressee(s), and recipient(s).

AA. *Identify (with respect to dates).* When referring to a date, the term "to identify" shall mean to give, to the extent known, the month, day, and year.

BB. *Identify (with respect to persons).* When referring to a person, the term "to identify" shall mean to give, to the extent known, the person's full name, present or last-known

address, and when referring to a natural person, additionally, the present or last-known place of employment, including a description of the person's job title, duties and responsibilities; and, if employed by you, the person's dates and regular places of employment and general duties. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

CC. *Including.* The term "including" means including without limitation.

DD. *Information.* The term "information" means individual documents and records, including associated metadata, whether on paper, film, or other media, as discrete files stored electronically, optically, or magnetically, or as a record within a database, archive, or container file, including emails, messages, word processed documents, recordings of videoconferences or conference calls, digital presentations, spreadsheets, database content, text messages, data recorded by Internet of Things (IoT) devices, and messages in workplace collaboration tools (including, without limitation, Slack, Microsoft Teams, and Google Hangouts) or ephemeral messaging applications.

EE. *Kennedy.* The name "Kennedy" or "Officer Kennedy" means plaintiff John Kennedy in this action.

FF. *Meeting.* The term "meeting," and its conjugates, means the contemporaneous presence of any natural persons (including by telephone or any electronic means) for any purpose, whether such presence was by chance or pre-arranged, and whether the meeting was formal or informal or occurred in connection with some other activity.

GG. *NYPD*. The term "NYPD" refers to the New York City Police Department.

HH. *Oddo.* The name "Oddo" or "Officer Oddo" means plaintiff Francesco Oddo in this action.

II. *PARKS*. The term "PARKS" refers to the New York City Department of Parks and Recreation.

JJ. *Pasieka.* The name "Pasieka" or "Officer Pasieka" means plaintiff Matthew Pasieka in this action.

KK. *Perez.* The name "Perez" or "Sergeant Perez" means plaintiff Rommel A. Perez in this action.

LL. *Person.* The term "person," and its conjugates, refers to natural persons, proprietorships, governmental agencies, corporations, partnerships, trusts, joint ventures, groups, associations, organizations, and all other entities.

MM. *Plaintiffs.* The term "Plaintiffs" means Sharon Tunnell, Edison Gbor, Gregory Gordon, Francesco Oddo, John Clarke, David R. Burgos, John D. Brancaccio, Jr., John Kennedy, Marc Robinson, Timothy Rivicci, John V. Schaefer, Matthew Pasieka, Rommel A. Perez, Matthew Demerest, and Aretha Simmons, individually and on behalf of all others similarly situated, including Jane and John Does 1-100.

NN. *PPE*. The term "PPE" means Personal Protective Equipment.

OO. *Relate.* The term "relate," and its conjugates, means contain, describe, embody, mention, constitute, concern, in connection with, comment on, impinge or impact upon, affect, respond to, analyze, support, corroborate, demonstrate, pertain to, prove, evidence, show, refute, dispute, rebut, controvert, contradict, reflect, incorporate, effect, set forth, refer to, include, either directly or indirectly, or be in any way logically or factually connected with, the subject matter of the inquiry or Interrogatory.

PP. *Rivicci.* The name "Rivicci" or "Mr. Rivicci" means plaintiff Timothy Rivicci in this action.

QQ. *Robinson.* The name "Robinson" or "Officer Robinson" means plaintiff Marc Robinson in this action.

RR. *Schaefer.* The name "Schaefer" or "Officer Schaefer" means plaintiff John V. Schaefer in this action.

SS. *Simmons.* The name "Simmons" or "Ms. Simmons" means plaintiff Aretha Simmons in this action.

TT. *Testimony*. The term "testimony" means any oral or written statements made under oath, in or out of court, whether by deposition, affidavit, declaration, in-court examination, or otherwise.

UU. *Thing.* The term "thing," and its conjugates, is synonymous with the broadest possible meaning of the word "things," as that word is used in Federal Rule of Civil Procedure 34(a). The term "thing," and its conjugates, does not include the term "document" and its conjugates.

VV. *Tunnell.* The name "Tunnell" or "Ms. Tunnell" means plaintiff Sharon Tunnell in this action.

WW. *Vaccine Mandate.* The term "Vaccine Mandate" refers to the City Worker COVID-19 Vaccine Mandate issued by Commissioner Chokshi on October 20, 2021, which required all City Workers to receive a COVID-19 vaccine by October 29, 2021. A copy of the mandate is attached to the Complaint as Exhibit 5 in this action.

XX. *You.* The term "you," and its conjugates, is synonymous with Defendants, as defined herein.

YY. The singular and masculine form of a noun or pronoun embraces, and shall be read and applied as, the plural or the feminine or neuter, as the context makes appropriate or permits to obtain the broadest possible meaning.

ZZ. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

## INSTRUCTIONS

1. The instructions outlined in Federal Rules of Civil Procedure 26 (to the extent applicable) and 33 are incorporated herein by reference. The terms defined above and the individual Interrogatories shall be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules of Civil Procedure.

2. These Interrogatories shall be deemed to continue in nature and require supplemental responses as specified in Federal Rule of Civil Procedure 26(e) if you (or any person acting on your behalf) obtain additional information called for by these Interrogatories between the time of the original response and the time set for trial. You must serve each supplemental response on Plaintiffs no later than thirty (30) days after the discovery of further information, and in no event shall any supplemental response be served later than one week before the first day of trial.

3. Furnish all information known or available to you, regardless of whether such information is possessed directly by you or your directors, officers, agents, employees, representatives, parents, subsidiaries, predecessors, successors, managing agents, divisions, affiliates, investigators, or by your attorneys, accounts, or their agents, employees, representatives, or investigators.

4. If you cannot answer any Interrogatory in full, answer it to the extent possible, specifying the reasons for your inability to answer the remainder, and stating whatever information, knowledge, or belief you have concerning the unanswered portion.

5. If, in responding to any of these Interrogatories you encounter any ambiguity in construing either the Interrogatory or a definition or instruction relevant thereto, set forth the matter deemed ambiguous and the construction used in responding to the Interrogatory.

6. If you object to any Interrogatory or subpart thereof, state, with specificity, all grounds for the objection.

7. No part of an Interrogatory may be left unanswered merely because you interpose an objection to another part of the Interrogatory. You shall answer the part of the Interrogatory to which you do not object.

8. If you claim the attorney-client, work-product, or other privilege for any answer responsive to these Interrogatories, provide, within forty-five (45) days of service of these Interrogatories and in no event later than fifteen (15) days after you first provide answers in response hereto, a privilege log pursuant to Federal Rule of Civil Procedure 26(b)(5). In accordance with Rule 26(b)(5), any such privilege log must, without limitation and at a minimum, separately identify the source of the information withheld under a claim of privilege, with respect to such source so identified, set forth:

(a) For documents:

(i) the Interrogatory to which such document would be responsive;

(ii) the date appearing on such document, or if no date appears, the date on which the document was prepared;

(iii) the name of each person to whom such document was addressed;

(iv) the name of each person, other than the addressee(s) identified in subparagraph (c) above to whom such document or copy thereof was sent, or with whom such document was discussed;

(v) the name of each person who signed such document or, if not signed, the name of each person who prepared it;

(vi) the name of each person making any contribution to the authorship of such document;

(vii) the job title or position of each person identified in subparagraphs (c), (d), (e) and (f) above;

(viii) the date such document was received or discussed by each person identified in subparagraphs (c) or (d) above;

(ix) the general nature or description of such document, and the number of pages it contains;

(x) the name of each person who currently has custody of such document; and

(xi) the specific ground(s) upon which the claim of privilege rests.

(b) For oral communications:

(i) the name and last known address of the person making the communication and the name(s) of the person(s) present while the communication was made, and, where not apparent, the relationship of the person(s) present to the person making the communication;

(ii) the date and place of the communication;

(iii) the general subject matter of the communication; and

(iv) the specific ground(s) upon which the claim of privilege rests.

9. Unless otherwise specified in any of the Interrogatories below, these Interrogatories cover the period from 2021 through the present.

10. Produce all responses to these Interrogatories to the law offices of Gibson Law Firm, PLLC, Attention: Sujata S. Gibson, 120 E. Buffalo Street, Suite 2, Ithaca, New York 14850, sujata@gibsonfirm.law.

## INTERROGATORIES

**Interrogatory No. 1.**

For each Plaintiff, identify all communications relating to the Plaintiff's request for religious or medical accommodation to the COVID-19 Vaccine Mandate, including but not limited to communications concerning the submission, review, evaluation, consideration, or determination of the request, as well as any communications concerning potential accommodations or alleged operational, safety, or undue hardship considerations.

For each such communication, state:

**a)** The date of the communication;

**b)** The method of communication (e.g., email, meeting, telephone call, memorandum, in-person discussion, portal message);

**c)** The identity, title, and agency affiliation of all participants;

**d)** The subject matter of the communication; and

**e)** Whether any notes, emails, memoranda, or other documents memorialize the communication.

If Defendant contends that no such communications occurred for any Plaintiff, so state.

**Interrogatory No. 2.**

For each Plaintiff, identify and state in detail the reason(s) the Plaintiff's request for religious or medical accommodation to the COVID-19 Vaccine Mandate was denied:

i) By the Plaintiff's employing agency; and

ii) By the Citywide Panel (or any centralized City decision-making body).

For each denial identified above, state:

a) The specific factual basis relied upon;

b) The policy, standard, or criteria applied;

c) Whether the denial was based on undue hardship, lack of sincerity, insufficiency of documentation, public health concerns, operational concerns, or any other ground (identify each);

d) Whether the reason(s) differed between the agency-level determination and the Citywide Panel determination; and

e) Whether each stated reason was determined based on an individualized assessment of the Plaintiff's circumstances or was categorical in nature.

f) Whether the employing agency and the Citywide Panel evaluated or made any determination as to undue hardship with respect to that Plaintiff's request, and if so, describe the determination.

If Defendant contends that the reasons for denial are fully set forth in a written denial letter, identify whether any additional reasons—formal or informal—were considered, relied upon, or discussed but not included in the denial letter.

**Interrogatory No. 3.**

Identify in detail all training, instruction, guidance, education, or informational materials provided—formally or informally—to any individual or body involved in reviewing, evaluating, recommending, or deciding requests for r easonable accommodation from the COVID-19 Vaccine Mandate.

For purposes of this Interrogatory:

i. "Training" includes, without limitation:

- Written materials, memoranda, directives, slide decks, scripts, talking points, FAQs, email guidance, recorded presentations, webinars, meetings, or oral briefings;
- Any materials created, distributed, or discussed at meetings (including but not limited to APO and/or EEO Officer meetings);
- Any guidance issued by DCAS, the Law Department, OLR, the Mayor's Office, or any other City entity.

ii. "Individuals or bodies involved" includes, without limitation:

- Members of the Citywide Panel;
- Agency Personnel Officers ("APOs");
- Equal Employment Opportunity Officers ("EEO Officers");
- Human Resources personnel;
- Commanding officers or agency leadership involved in accommodation determinations;
- Any City employee who reviewed, evaluated, recommended, approved, or denied a religious accommodation request;
- Any such individuals in any City agency, including but not limited to FDNY, NYPD, DSNY, DPR, DOE, DCAS, and any other City agency.

The foregoing examples are illustrative only and are not intended to limit the scope of this Interrogatory.

For each such training or guidance identified, state:

a) The date(s) provided;

b) The entity or individual(s) who created or delivered it;

c) The recipients (including job titles and agencies);

d) The format (e.g., written memorandum, slide deck, meeting, webinar);

e) Whether any materials exist reflecting the training or guidance;

**f)** The custodians and locations of such materials, including ESI systems searched.

**Interrogatory No. 4.**

Identify all persons with knowledge or information regarding what COVID-19 mitigation measures or strategies (including but not limited to weekly testing, masking, etc.) the City considered, implemented, or proposed as potential or actual accommodations to the Vaccine Mandate, including each person's role in evaluating or recommending such strategies.

**Interrogatory No. 5.**

State whether the City received COVID-19 Relief Funds during the period of the COVID-19 Vaccine Mandate and, if so:

a) Identify the source(s) of such funds;

b) State whether any such funds were available to offset costs associated with accommodating City employees (including testing, PPE, or safety measures);

c) State whether any such funds were considered in evaluating whether granting religious accommodations would impose an undue hardship.

If Defendant contends that no such funds were available or considered, so state.

**Interrogatory No. 6.**

State whether Defendants contend that granting any Plaintiff's requested religious accommodation to the COVID-19 Vaccine Mandate would have imposed an undue hardship.

For each Plaintiff for whom undue hardship is asserted, state:

a) The specific nature of the alleged hardship;

b) The specific accommodation considered (e.g., weekly testing, masking, Leave Without Pay, etc.);

c) Whether the alleged hardship is based on cost, operational impact, staffing impact, safety risk, public health risk, morale, collective bargaining constraints, or any other ground (identify each);

d) Whether the alleged hardship was individualized to that Plaintiff or categorical in nature;

e) The factual basis for the alleged hardship;

f) The name and agency of the individual who made the determination regarding undue hardship;

g) Whether any data, analysis, or evaluation was performed prior to denial (identify); and

h) Whether Defendant contends that permitting weekly testing in lieu of vaccination would have imposed an undue hardship, and if so, describe in detail the basis for that contention.

If Defendant contends that any of the Plaintiff's requested accommodation would not have imposed an undue hardship, so state.

**Interrogatory No. 7.**

Identify all persons, entities, publications, guidance documents, studies, articles, governmental communications, or other sources upon which the City relied in forming, adopting, or communicating the position regarding:

a) Whether the COVID-19 vaccines contain aborted fetuses, aborted fetal tissue, aborted fetal cell lines, or aborted fetal cells;

b) Whether the COVID-19 vaccines were created, developed, produced, manufactured, and/or tested using aborted fetal cell lines;

c) Whether over-the-counter medications (including but not limited to Tylenol, Advil, Aspirin, Benadryl, or Pepto Bismol) were created, developed, produced, manufactured, and/or tested with aborted fetal cell lines; and/or

d) Whether an employee's prior use of over-the-counter medications (including but not limited to Tylenol, Advil, Aspirin, Benadryl, or Pepto Bismol) was relevant to evaluating a religious objection based on aborted fetal cell lines.

For each source identified, state:

i) The person(s) who reviewed or relied upon the source;

ii) The date(s) such reliance occurred;

iii) Whether the source was internal or external to the City;

iv) Whether any expert, consultant, medical professional, or public health authority was consulted; and

v) Whether the source was communicated to APOs, EEO Officers, the Citywide Panel, or agency decision-makers.

If Defendant contends that no specific sources were relied upon, so state.

**Interrogatory No. 8.**

Describe in detail how objections to the COVID-19 Vaccine Mandate based on abortion, aborted fetal tissue, or aborted fetal cell lines were to be reviewed, evaluated, or addressed by City personnel responsible for determining religious accommodation requests.

In your response, state:

a) Whether any written or unwritten guidance, communications, recommendations, talking points, discussions, or informational materials were provided to APOs, EEO Officers,

agency personnel, the Citywide Panel, or other decision-makers regarding such objections;

b) The substance of any such guidance, communications, or discussions;

c) The person(s) or entity(ies) who provided or conveyed such guidance or information;

d) The intended recipients;

e) The date(s) and manner in which such guidance or information was conveyed (e.g., email, meeting, webinar, written memorandum, APO-EEO meeting, or other forum);

f) Whether such guidance differed depending on whether the objection was that the vaccine "contained" fetal tissue versus being "tested or developed using" fetal cell lines; and

g) Whether such guidance was applied to any Plaintiff (identify which Plaintiff(s)).

If Defendant contends that no guidance, communications, or direction of any kind were provided regarding such objections, so state.

**Interrogatory No. 9.**

Identify all FDNY, NYPD, DSNY, Parks, and DCAS employees who were granted an exemption, accommodation, or other approval excusing compliance, in whole or in part, with the COVID-19 Vaccine Mandate on religious or medical or any other grounds.

For purposes of this Interrogatory:

- "Granted" includes any temporary, conditional, partial, or permanent approval allowing the employee to remain employed without full compliance with the Vaccine Mandate.
- "Accommodation" includes, without limitation, testing protocols, masking requirements, reassignment, modified duty, unpaid leave in lieu of termination, or any other alternative to termination.

For each such employee, state:

a) Full name;

b) Civil service title at the time the accommodation was granted;

c) Agency and assignment/command;

d) Primary work location;

e) Work status at the time of grant (e.g., full duty, light duty, leave status);

f) Whether the accommodation was religious or medical;

g) The specific accommodation granted (e.g., weekly testing, masking, etc.);

h) The date granted and duration;

i) Whether any operational, scheduling, or assignment limitations were imposed;

j) Whether the accommodation was revoked, modified, or remains in effect.

**Interrogatory No. 10.**

Identify the person(s), office(s), or entity(ies) who participated in, recommended, approved, authorized, or determined the specific terms or conditions of any reasonable accommodation granted in lieu of vaccination under the COVID-19 Vaccine Mandate (including, but not limited to, masking, periodic testing, weekly PCR testing, reassign ment, modified duty, or other mitigation measures).

For each City agency, including but not limited to FDNY, NYPD, DSNY, Parks, and DCAS, state:

a) The name(s) and title(s) of the person(s) involved;

b) The agency affiliation of each such person;

c) Whether the determination of accommodation terms was made at the agency level or pursuant to a Citywide directive or centralized decision-making body (identify which);

d) Whether the terms were standardized across agencies or varied by agency; and

e) Whether any written or unwritten guidance governed the selection of accommodation terms.

If Defendant contends that accommodation terms were determined pursuant to a uniform Citywide policy or directive, so state and identify the person(s) responsible for issuing or approving such policy.

**Interrogatory No. 11.**

Identify all persons and entities who participated in drafting, revising, editing, reviewing, approving, or publishing the following City policies or guidance documents:

i. "FAQ on New York City Employees Vaccine Mandate"; and

ii. "Managing the Office in the Age of COVID-19."

For each such person identified, state:

a) Full name;

b) Title and agency affiliation at the time of involvement;

c) The nature of the person's involvement (e.g., drafting, legal review, policy development, approval authority, revision, publication);

d) The date(s) of involvement; and

e) Whether the person's involvement related specifically to provisions concerning religious or medical accommodations.

If Defendant contends that either document was developed pursuant to a centralized directive or interagency collaboration, identify all participating agencies and the coordinating entity.

**Interrogatory No. 12.**

Identify and describe all information upon which the Citywide Panel relied in determining whether granting a request for religious or medical accommodation to the COVID-19 Vaccine Mandate would impose an undue hardship.

In your response, state:

a) The source of the information (including any agency, DCAS, Law Department, Department of Health, or external entity);

b) Whether the information was categorical in nature or specific to an individual employee;

c) The person(s) who provided or conveyed the information;

d) The date(s) on which the information was conveyed;

e) The manner in which the information was conveyed (including, but not limited to, email, written submission, memorandum, webinar, APO/EEO meeting, Citywide Panel meeting, or other coordinated forum);

f) Whether any contemporaneous notes, minutes, memoranda, or summaries memorialize the communication; and

g) Whether the Citywide Panel conducted any independent analysis based on the information received.

If Defendant contends that the Citywide Panel did not rely upon any individualized information for any Plaintiff, so state.

Include in your response the specific information relied upon, if any, with respect to each Plaintiff.

**Interrogatory No. 13.**

Identify all persons who participated in reviewing, evaluating, recommending, advising on, or deciding each Plaintiff's request for religious or medical accommodation to the COVID-19 Vaccine Mandate at:

i. The agency level; and

ii. The Citywide Panel level.

For each person identified, state:

a) Full name;

b) Title and agency affiliation at the relevant time;

c) The role the person played in the evaluation or decision;

d) Whether the person made the final determination or provided a recommendation.

**Interrogatory No. 14.**

Identify all persons who participated in reviewing, evaluating, recommending, advising on, or deciding religious accommodation requests to the Vaccine Mandate for each City agency.

For each person identified, state:

a) Full name;

b) Title and agency affiliation at the relevant time;

c) The role the person played in the decision-making for the agency;

d) Whether the person made the final determination or provided a recommendation.

**Interrogatory No. 15.**

Identify all City Workers reinstated after having been placed on leave without pay and/or terminated or separated from employment due to non-compliance with the Vaccine Mandate, and include total numbers per City Agency.

For each employee identified, state:

a) Full name;

b) Agency;

c) Civil service title at the time of LWOP/termination/separation and at reinstatement (if different);

d) Primary work location (including borough and facility/command) at the time of LWOP/ termination/separation;

e) Whether the employee was placed on leave without pay, terminated/separated, or both;

f) If placed on LWOP: the LWOP start date and LWOP end date (or date returned to paid status);

g) If terminated/separated: the termination/separation effective date

h) The reinstatement date;

i) The basis for reinstatement (e.g., settlement, arbitration award, court order, agency determination, appeal reversal, other); and

j) Identify all persons who participated in, recommended, approved, authorized, or made the decision to reinstate the employee, including each person's title and agency affiliation at the time.

**Interrogatory No. 16.**

State whether the standards, criteria, review process, or decision-making framework applied to religious accommodation requests differed in any respect from those applied to medical accommodation requests under the COVID-19 Vaccine Mandate.

If so, describe in detail:

a) Each difference in standards, criteria, or evaluation;

b) The person(s) or entity(ies) responsible for establishing such differences;

c) Whether the City contends that undue hardship was analyzed differently for religious and medical requests; and

d) The factual or policy basis for any such difference.

If Defendant contends there were no differences, so state.

**Interrogatory No. 17.**

State whether the City, including but not limited to any agency and/or the Citywide Panel, at any time from the announcement of the COVID-19 Vaccine Mandate through its recission, considered antibody testing as a potential reasonable accommodation, alternative compliance method, or exemption to the Vaccine Mandate.

If so, state:

a) When such consideration occurred;

b) The person(s), office(s), or body(ies) who considered it;

c) Whether the consideration was citywide or agency-specific;

d) The basis for rejecting or declining to implement antibody testing as an accommodation; and

e) Whether antibody testing was considered with respect to any Plaintiff specifically.

If antibody testing was considered with respect to any Plaintiff, identify:

i. The Plaintiff(s);

ii. The person(s) who evaluated the issue;

iii. The date(s) of such evaluation; and

iv. The reason it was not offered or approved.

If Defendant contends that antibody testing was never considered, so state.

**Interrogatory No. 18.**

State whether, during the period from the announcement of the COVID-19 Vaccine Mandate through its rescission, the City or any City agency conducted, ordered, required, or offered antibody testing or serology testing for COVID-19 or SARS-CoV-2 for any City employee.

If so, state:

a) The agency or agencies that conducted or required such testing;

b) The purpose(s) for which antibody testing was conducted;

c) Whether the results of such testing were maintained in employee medical or personnel records;

d) Whether the existence of antibodies or proof of prior infection was considered in evaluating compliance with the Vaccine Mandate;

e) Whether antibody testing or proof of natural immunity was considered as a potential reasonable accommodation or alternative to vaccination; and

f) Whether any Plaintiff was antibody tested by the City, and if so, identify:

   i. The Plaintiff;

   ii. The date(s) of testing;

   iii. The result; and

   iv. Whether the result was considered in evaluating that Plaintiff's accommodation request.

If Defendant contends that antibody testing was not considered relevant to accommodation decisions, so state.

**Interrogatory No. 19.**

With respect to each Plaintiff, identify all persons who participated in, recommended, approved, authorized, or made the decision to:

a) Place the Plaintiff on Leave Without Pay for non-compliance with the Vaccine Mandate;

b) Terminate or separate the Plaintiff from employment for non-compliance with the Vaccine Mandate;

c) Issue any notice, communication, or determination informing the Plaintiff that they would be placed on Leave Without Pay or terminated for non-compliance; or

d) Take any action that resulted in the Plaintiff retiring, resigning, or otherwise separating from employment in lieu of being placed on Leave Without Pay or terminated for non-compliance.

For each such person identified, state:

i. Full name;

ii. Title and agency affiliation at the time;

iii. The specific action in which the person participated;

iv. The date(s) of involvement; and

v. Whether the action was taken pursuant to a Citywide policy, agency directive, or individualized determination (identify which).

**Interrogatory No. 20.**

With respect to Plaintiffs' requests for a reasonable accommodation to the Vaccine Mandate, identify any communication the City had with each of the Plaintiffs regarding (a) their respective accommodation needs, (b) potential accommodations, or (c) difficulties any potential accommodations may have posed for the City.

**Interrogatory No. 21.**

Identify all persons with knowledge of the value of Plaintiffs' compensation for their employment with the City, including salary, overtime, pension, benefits, and any other forms of compensation.

**Interrogatory No. 22.**

Identify all persons who evaluated, assessed, reviewed, advised, recommended, or opined – formally or informally – whether granting any Plaintiff a religious or medical accommodation to the Vaccine Mandate would pose an undue hardship, including but not limited to any such person who assessed cost, safety, operational impact, or public health risk.

For each such person identified, state:

e) The person's full name and title;

f) Agency or department affiliation;

g) The Plaintiff(s) to whom the evaluation or advice pertained;

h) The date(s) of such evaluation or advice;

i) The nature of the evaluation (e.g., cost assessment, legal review, policy determination, etc.);

j) Whether the evaluation was individualized to a specific Plaintiff or categorical in nature; and

k) Whether the evaluation occurred before or after the denial of the Plaintiff's accommodation request.

If Defendant contends that no such evaluation occurred for any Plaintiff, so state.

**Interrogatory No. 23.**

Identify all facts, data, analyses, evaluations, calculations, assessments, or information that Defendants contend demonstrate that granting each (or any) of the Plaintiffs' an accommodation to the Vaccine Mandate would have imposed an undue hardship at the time the request was denied.

For each fact or item identified, state:

a) The date it was created or obtained;

b) The author or creator;

c) The person(s) who reviewed or relied upon it;

d) Whether it was created before or after Plaintiff's accommodation was denied; and

e) Whether it was specific to Plaintiff, Plaintiff's job title, Plaintiff's agency, or was citywide in nature.

**Interrogatory No. 24.**

State whether the City, including but not limited to any agency, and/or the Citywide Panel, established, considered, or relied upon any numerical threshold, projection, staffing model, percentage, assumption, or quantification regarding the number or proportion of employees who could remain unvaccinated before an undue hardship would result.

If so, identify:

a) The threshold, projection, assumption, or model considered;

b) The person(s) who developed, approved, or relied upon it;

c) The data or information upon which it was based;

d) Whether it was applied citywide, agency-wide, command-level, facility-level (e.g., firehouse, precinct, sanitation garage, park location), or otherwise geographically segmented (identify which); and

e) Whether any such threshold or projection was applied in evaluating any Plaintiff's request.

If Defendant contends that no numerical or geographic assessment was considered in evaluating undue hardship, so state.

Dated: April 3, 2026

GIBSON LAW FIRM, PLLC

By: /Sujata Gibson/

Sujata S. Gibson
120 E. Buffalo Street, Suite 2
Ithaca, NY 14850
(607) 327-4125

***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of April, 2026, the foregoing **PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS** was served upon counsel of record by email and first-class U.S. Mail, at the following address:

Sonja Gidumal Chazin
Muriel Goode-Trufant
CITY OF NEW YORK
LAW DEPARTMENT
100 Church Street
New York, New York 10007

Attorneys for Defendants

Sujata Gibson

Sujata S. Gibson, Esq.